

**NUMBER 13-13-00569-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF W.H.J., A CHILD

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

This is an appeal from a final order in a suit affecting the parent-child relationship. By two issues, appellant Lonnie Jackson asserts that the trial court abused its discretion in (1) refusing to impose a geographic restriction and allowing W.H.J.[1] to be moved to China; and (2) awarding attorney's fees to appellee Wei Han's counsel. We affirm.

---

[1] We will use initials to protect the child's identity. *Cf.* TEX. R. APP. P. 9.8 (requiring appellate courts to use aliases or initials when referring to minors involved in parental-rights termination appeals).

# I.  BACKGROUND

W.H.J. is the minor child of Jackson and Han, who were briefly involved in a relationship.  At the time of trial, W.H.J. was nine-months old and resided in Nueces County with Han.  The matter was tried to the bench, and the trial court made the following relevant findings of fact:

3. [It] is in the best interest of [W.H.J.] for [Jackson] and [Han] to have a continuing, close relationship with [W.H.J.].

5. [W.H.J.] has substantial ties to the People's Republic of China in that [Han's] entire family resides there, including a half-brother to [W.H.J.].

6. [Jackson] does not speak Chinese and does not have any significant ties to the People's Republic of China.

10. [Jackson] failed to support [Han] during the pre-natal care.

11. [Jackson] abandoned [W.H.J.] and [Han] for five months after [W.H.J.] was born . . . (C-section and absolutely no help for the eight weeks of recovery) (Came to hospital for five minute visit after surgical delivery and she never saw him again.)

12. [Jackson] refused to sign the birth certificate and failed to give [Han] his phone number or address.

13. [Han] has:
    a. No job skills to survive in the United States.
    b. No marketable education in the United States.
    c. No family support in the United States.
    d. No transportation in the United States.

14. [Han] was under threat of imminent home foreclosure.

15. [Han] speaks only Chinese to [W.H.J.].

16. [Han] is not proficient in speaking English.

17. [Han] has no material or significant community ties.

18. [Han] is currently only breast feeding [W.H.J.].

2

19.     [I]n China, [W.H.J.] has grandparents, a half[-]brother, family support and stable housing.

Han testified that it was her intention to take W.H.J. to China for "one year" and that she would return to the United States because she, as well as W.H.J., are U.S. citizens. Han also testified that she wants W.H.J. to "receive love from" Jackson. Han stated that she only intends to stay in China for one year, in order to get a job and allow W.H.J. to receive "early education in China."

In its final order, the trial court appointed Han and Jackson joint managing conservators of W.H.J. and found that joint managing conservatorship was in W.H.J.'s best interest. The trial court further ordered that Han would have sole and exclusive possession of W.H.J., as well as the exclusive right to designate the primary residence of [W.H.J.] without regard to geographic location, but should Han move permanently to Texas, such move "would constitute a material and substantial change." The trial court also ordered that Jackson would have the right of possession for up to fifty days per calendar year and "such period of possession shall be solely in the city of [Han's] residence until the child reaches the age of four-years-old at which time the location of [Jackson's] right of possession shall be at his discretion," so long as it does not interfere with W.H.J.'s school schedule.

In addition to paying child support, the trial court also ordered Jackson to pay $283.00 per month into a trust account, the sole purpose of which shall be for "reasonable transportation expenses to or from China including expenses on the ground, not just air [fare]," but if not used, it "shall be used for [W.H.J.'s] education." Finally, the trial court ordered Jackson to pay Han's attorney $5,000 in attorney's fees at a rate of $138.89 per

3

month for thirty-six months.   This appeal followed.

## II.   GEOGRAPHICAL RESTRICTION

By his first issue, Jackson asserts that the trial court abused its discretion in failing to impose a geographical restriction on W.H.J.'s residence.

## A.   Standard of Review

We review a trial court's decision regarding child custody, control, possession, and visitation under an abuse of discretion standard.   *In re K.L.W.*, 301 S.W.3d 423, 424 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion.   *In re D.S.,* 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).   The sufficiency review is related to the first inquiry.   *Id.*   If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision.   *Id.*

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support the trial court's findings, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 822, 827 (Tex. 2005).   The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review.   *Id.*

4

at 827–28. We may sustain a no-evidence challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. In reviewing the factual sufficiency of the evidence, we examine all of the evidence and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## B. Applicable Law

In rendering an order appointing joint managing conservators, the trial court shall, *inter alia*, designate the conservator who has the exclusive right to determine the primary residence of the child and establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or specify that the conservator may determine the child's primary residence without regard to geographic location. TEX. FAM. CODE ANN. § 153.134(b) (West, Westlaw through Ch. 46 2015 R.S.). Here, the trial court ordered that Han had the right to designate W.H.J.'s primary residence without regard to geographic location.

In all suits affecting parent-child relationships in Texas, the Legislature has stated that the public policy of Texas is to:

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

5

*Id.* § 153.001 (West, Westlaw through Ch. 46 2015 R.S.).

When a parent seeks to relocate, the Texas Supreme Court has outlined several factors for courts to consider in balance in its determination on whether to impose a restriction on that parent's choice to relocate. *See Lenz v. Lenz*, 79 S.W.3d 10, 14–16 (Tex. 2002). These factors include: (1) reasons for and against the move, (2) education, health, and leisure opportunities afforded by the move, (3) accommodation of the child's special needs or talents, (4) effect of extended family relationships, (5) effect on visitation and communication with the noncustodial parent, (6) noncustodial parent's ability to relocate, and (7) the child's age. *In re K.L.W.*, 301 S.W.3d at 425–26 (Tex. App.—Dallas 2009, no pet.) (citing *Lenz*, 79 S.W.3d at 15–16). Courts may also consider the general factors relevant to the best interest of a child, such as (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present or future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See id.* at 426 (citing *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976)).

## C. Discussion

Jackson argues that insufficient evidence supports the trial court's eleventh, thirteenth, sixteenth, and seventeenth findings of fact.[2] We disagree.

---

[2] Jackson complains that the trial court "halted evidence," prior to a conference in chambers, and

6

First, with regard to finding number eleven, Han testified that Jackson "never" saw W.H.J. from the time he was born until February 2013. According to Han, despite Jackson's promises to "see" W.H.J. and help with W.H.J.'s care, Jackson never visited. Han further testified that she unsuccessfully attempted to locate Jackson by telephone and written correspondence after W.H.J.'s birth. Moreover, evidence was admitted of an infection that Han sustained following the Caesarean-section surgery during W.H.J.'s birth. Beverly Cage, Han's friend, also testified that she visited Han "every day for eight weeks" following W.H.J.'s birth and that Jackson never showed up to visit Han or W.H.J., but she did see him "one time" at the hospital.

Second, with regard to finding number thirteen, the evidence shows that Han has limited English ability, limited job skills, no family in the United States, and no automobile. Cage, who is the director of student leadership and campus life at Del Mar College, testified that Han has no support system in Nueces County other than Cage and Han's lawyer. Cage also testified that she has transported Han to pay bills because Han is without an automobile. Cage also described Han as "lonely," "scared," "confused," and "impoverished." Cage further opined that if Han was required to stay in Corpus Christi or the United States, "her future will be very bleak unless she gets some type of additional education for herself and be able to get a job and take care of her and [W.H.J.]." Despite

did not allow him to "present any contrary evidence or testimony to the trial court for consideration." To the extent that Jackson asserts that this was error, we conclude that it is not properly preserved for our review.

As a prerequisite to presenting a complaint on appeal, the record must show that a sufficient and timely request, objection, or motion was made to the trial court to make it aware of the error, and the trial court ruled on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). Nothing in the record shows that Jackson objected to the trial court's meeting in chambers and "halting" of evidence at the time of trial. As a result, such complaint on appeal, if any, is not properly preserved.

obtaining an associate's degree in criminal justice, Han has held various jobs at Jason's Deli, Omni Hotel, and H-E-B grocery store, which she quit because she was pregnant with W.H.J. Han admitted that she owns a car, but the engine is "broken." Han also stated that she currently has no source of income. Finally, Han testified that "there's nobody to help [her] take care of . . . [W.H.J.]" and that she has "to do everything by [herself]."

Third, with regard to finding number sixteen, the record shows that Han testified through a certified Chinese interpreter. Han also admitted to the trial court that her English skills are poor, and her poor English prevents her from obtaining a job. Cage testified that Han had told her that the bank was foreclosing on Han's home, but Han did not understand what was happening because of her limited English skills.

Fourth, with regard to finding seventeen, much of the evidence also lends support to this finding. Han's and Cage's testimony shows that aside from Cage and Han's attorney, Han has no support system in Nueces County. Additionally, the record shows that all of her immediate family, including another son, live in China.

Based on this record, we hold that the trial court had sufficient information upon which to exercise its discretion of not placing a geographic restriction on the determination of W.H.J.'s primary residence. Furthermore, the trial court could have reasonably found for the following reasons, which are supported by the evidence, that any move to China would be in W.H.J.'s best interest because of W.H.J.'s very young age; Han and W.H.J.'s substantial ties to China and lack of any ties, aside from Jackson, to Nueces County; Han's family support system in China; W.H.J.'s half-brother lives in China. Additionally, the trial court's "special trust" provision sets up a mechanism to allow Jackson to visit

8

W.H.J. in China. *See Lenz*, 79 S.W.3d at 15–16; *Holley*, 544 S.W.2d at 271–72. Therefore, we conclude that the trial court properly exercised its discretion in not placing a geographic restriction on determining W.H.J.'s residency. *See also In re D.S.,* 76 S.W.3d at 516. Jackson's first issue is overruled.

### III.     ATTORNEY'S FEES

By his second issue, Jackson asserts that the trial court abused its discretion in awarding Han attorney's fees of $5,000.

### A.  Applicable Law and Standard of Review

In a suit affecting a parent-child relationship, the family code invests a trial court "with general discretion to render judgment for reasonable attorney's fees to be paid directly to a party's attorney." *Tucker v. Thomas*, 419 S.W.3d 292, 296 (Tex. 2013) (citing TEX. FAM. CODE ANN. § 106.002(a) (West, Westlaw through Ch. 46 2015 R.S.)). Because this issue is subject to review for an abuse of discretion, we use the standard of review articulated in Part II(A) of this opinion.

### B.  Discussion

Jackson argues that the evidence is insufficient to support the trial court's award of $5,000 in attorney's fees. Again, we disagree.

During Han's attorney's opening statements, he advised the trial court that he would be seeking attorney's fees, to which the trial court interjected:

THE COURT:        What are your attorney fees?

[Han's Counsel]:   At this standing, Your Honor, having to go through a total of 51 hours. Twenty just as this hearing began. I anticipate post-trial, three hours, appeal $5,000, District Court review $5,000 and then a request of the Supreme Court another $5,000. So by the time today's

9

>hearing is over probably have about 55 hours and then three hours post-trial.

THE COURT: So, what are you requesting?

[Han's Counsel]: If you do 25 [sic] an hour. $12,375 and to include in your order, Your Honor, that the $12,375 is ordered as additional child support. If the Court is familiar, that would be an important part.

Based upon this record, we conclude that the trial court, acting as the finder of fact, properly exercised its discretion in awarding Han attorney's fees of $5,000.00.    *See id.* The record shows that the trial court considered Han's attorney's contentions that he had $12,375 worth of fees in this case, and awarded $5,000.00 to be paid on a monthly basis over three months.    Finally, we note that Jackson does not contest the competency of these statements, but merely argues that such statements are insufficient.    We disagree and find that the trial court properly exercised its discretion in awarding Han attorney's fees based on Han's counsel's representations.    *See* TEX. FAM. CODE ANN. § 106.002(a). Jackson's final issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's order.


GINA M. BENAVIDES,
Justice


Delivered and filed the
20th day of August, 2015.

10